UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RANDALL D. NELSON,

        Plaintiff,

v.                                     Case Number 07-11582-BC
                                          Honorable Thomas L. Ludington

AIG DOMESTIC CLAIMS, and
AIG INSURANCE SERVICES, INC.,

        Defendants.
_____/

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO AFFIRM THE PLAN ADMINISTRATOR'S DENIAL OF BENEFITS AND DENYING PLAINTIFF'S MOTION IN RESPONSE**

Plaintiff Randall D. Nelson ("Plaintiff") elected to participate in an accident insurance plan, an employee welfare benefits plan under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001, *et seq.*, administered by AIG Life Insurance Company. Defendants AIG Domestic Claims and AIG Insurance Services ("Defendants") denied Plaintiff's claim for long-term disability benefits stemming from a back injury, determining that Plaintiff did not become totally disabled within 365 days of an accident, and, in the alternative, determining that his injury was not the result of an "accident." Plaintiff appealed, and Defendant reviewed and upheld its denial of benefits. Plaintiff sought review of that decision in this Court. The Court has considered the parties' submissions and now concludes that Defendants' denial of benefits was not arbitrary and capricious.

I

Plaintiff worked for Dow Chemical as an activities advisor, among other responsibilities, from sometime prior to 1992 until a disputed time in 2001 or 2002. The parties dispute Plaintiff's

actual final day of employment, and the date is important to Plaintiff's claim. Plaintiff contends that he was injured in an accident in May of 2001 and that he stopped working in December of 2001. Defendants assert that Plaintiff's final day of work was more than a year after the date of the injury, June 18, 2002.

As earlier stated, Plaintiff voluntarily enrolled in The Dow Chemical Company Voluntary Group Accident Insurance Plan ("The Plan"). The Plan provides permanent total disability coverage for accidents, subject to the following "Permanent Total Disability Indemnity" condition:

> When as the result of injury and commencing within 365 days of the date of the accident an Insured Person is totally and permanently disabled and prevented from engaging in each and every occupation or employment for compensation or profit for which he is reasonably qualified by reason of his education, training or experience, the Company will pay, provided such disability has continued for a period of twelve consecutive months and is total, continuous and permanent at the end of this period, the Principal Sum.

Plan Record (PR) at 51, 84. The plan defines an "Injury" as a: "bodily injury caused by an accident occurring while this policy is in force as to the Insured Person and resulting directly and independently of all other causes in loss covered by this policy." PR at 45, 80.

Plaintiff sought long-term disability benefits from the Plan based on back problems. Plaintiff's record indicates that he first injured his back on June 22, 1992. Administrative Record (AR) at 3, 31, 55. As a result of the injury, Plaintiff underwent surgery to repair the injury, but suffered complications that lead to additional medical treatment. *Id.* His records indicate that his first surgery sought to repair a ruptured disc, but left him with the complication of post-operative spinal fluid leak. *Id.* A second surgery left him with Osteomyelitis[1] and renal failure. *Id.* In June

---

[1] According to an internet health web-site "Osteomyelitis is an acute or chronic inflammatory process of the bone and its structures secondary to infection with pyogenic organisms." See

1999, Plaintiff re-injured his back while performing his duties as the Activity Coordinator. AR at 4. Soon thereafter, Plaintiff sought medical treatment related to his back problems from several doctors. AR at 12-15. Plaintiff underwent another surgery in May 2000, which was apparently unsuccessful. AR at 29. On September 12, 2000, Plaintiff continued to experience "pretty significant back pain." AR at 15. During this time, it appears that Plaintiff continued as an employee at a Dow Chemical ("Dow") facility.

Plaintiff's next suffered an injury when he slipped and fell on ice outside of his house, injuring his right shoulder and right buttock on January 22, 2001. AR at 16. After that accident, Plaintiff underwent physical therapy and medical treatment for the resulting back pain. AR at 16, 17. The report indicated that Plaintiff "has not been working because his work requires lots of computer work and he has been unable to use the mouse." AR at 16. Additionally, Plaintiff stated that "he cannot work as long as his right shoulder is unable to be used because he is right handed" and that he felt as much back pain as he did prior to his third back surgery. AR at 16.

A January 31, 2001 report indicates that Plaintiff remained unable to work due to the shoulder injury. AR at 17.

On March 21, 2001, a medical report indicates that Plaintiff "works as Supervisor/Coach/Activity Coordinator, much of his time has been spent [at a] computer." AR at 167. Dow accommodated Plaintiff's injury by installing an alternate keyboard and mouse, so that he could continue working with his shoulder injury. *Id.*

According to Plaintiff, he re-injured his back prior to the end of May 2001. AR at 29. Over the next several months, Plaintiff's received medical treatment for his continuing pain. Medical

---

www.emedicine.com/emerg/topic349.htm.

reports indicates that Plaintiff suffered from a degenerative disc disease and severe spinal stenosis. AR at 18.

From December 2001, Dow altered his Plaintiff's employment duties. From that time on, Dow permitted Plaintiff to work from his home with the use of a Dow laptop computer until June 18, 2002. AR at 145, 161.

On January 31, 2002, a medical report states that Plaintiff "does not think that he can continue work." AR at 21. A July 24, 2002 report states that Plaintiff "was on the Family Medical Leave Act, then he worked at home on a computer and now Dow is supporting him in what is called a Medical Retirement . . . " AR at 24. That report also indicates that Plaintiff initially injured his back on June 22, 1992 and "reinjured it in 1999 and again 1-4-2002." AR at 24.

A December 20, 2002 letter authored by his doctor states that Plaintiff "had been working under restrictions . . . [and] has good days and bad and when working could not complete a full day at work. His employer provided part time work based on [Plaintiff's] ability to withstand pain and limited his ability to safely get around the work site until 12/01. Recently, [Plaintiff] has been off work due to lower back pain." AR at 22.

On December 23, 2002, Plaintiff applied for Permanent Total Disability benefits under the Plan with the claims administrator of the Plan. AR at 2-5. In response to the inquiry "Date Employee/Member Last Worked," Plaintiff wrote "June 18, 2002." AR at 2. Under the section that asked "[h]ow did accident (sic) happen? describe injuries received," Plaintiff wrote "[c]hronic back pain from 1992 injury lifting (sic), operation resulted in spinal leak [and] osteomyolitis L4/L5 aggravated injury in 2001 [and] 2002. Loss of feeling in both feet, lower back pain, [and] hip/leg pain." AR at 3. Under the section that inquired "When did accident happen? (Mo., Day, Year),"

Plaintiff wrote "per records 6-22-1992." *Id.* In an attachment to the claim application, Plaintiff wrote the following: "November & December 2001 pain increased due to sequestered disc in L-4/L-5 area. AR at 4. June 2002 placed on extended sick leave by Dow Medical, due to 'serious medical condition' supported by Dr. Harshman (Family Doctor) and Dr. Schultz, U of M, PM&R Spine Program, Ann Arbor, MI. Placed on Long Term Disability December 18, 2002." *Id.*

On January 7, 2003, AIG's claims examiner Jill Vivian ("The Claims Examiner") informed Plaintiff that he was not eligible for long-term disability benefits under the Plan because his claim form indicated that he was working on June 18, 2002. AR at 27-28. The Claims Examiner contended that under the terms of the plan Plaintiff's application for benefits was premature because his "disability [had] not continued for a period of twelve consecutive months as required under the Policy." AR at 28. The Claims Examiner informed Plaintiff that he could re-apply for benefits after June 18, 2003, but to "provide specific details of the accident" when he did so. Id.

On May 18, 2004, Plaintiff re-filed his claim. AR at 29. In his letter, Plaintiff stated that he "had last actively worked on June 18, 2002" and that he was complying with her instruction of re-applying more than one year after he stopped actively working. *Id.* He described his injury as follows: "[t]he exact date of the most recent injury is early 2001 prior to the end of May. *Id.* I was climbing ladders, stairs, and pieces of equipment with safety equipment on a regular basis." *Id.* Plaintiff stated that he was the "Shutdown Manager, [which] required surveying, monitoring and inspecting equipment before and during shutdown." *Id.* In that letter, Plaintiff also stated that "[he] was placed on Social Security Disability with 'severe impairment' under SSA regulations." *Id.*

In September of 2004, outside legal counsel provided the Claims Examiner with an analysis of Plaintiff's claim. AR at 120-24. The analysis raised three issues that, in the opinion of counsel,

were ambiguous. AR at 123. Specifically, the date of the latest accident, Plaintiff's last day of work, and the nature of Plaintiff's work between the date of the accident and his final day of work. *Id*.

The Claims Examiner sought clarification from Dow regarding these three issues. AR at 127. In that letter, the Claims Examiner requested that Dow confirm the date of the accident, his final day of work, a description of duties that Plaintiff performed between the date of the accident and his final day of work, and any periods of sick leave in the previous three years. *Id*. The Claims Examiner acknowledged that Plaintiff's final day of work was ambiguous because Plaintiff's claim form indicated that his final day of work was June 18, 2002, but that "Social Security indicates that '[Plaintiff] has not engaged in substantial gainful activity since December 20, 2001.'" *Id*.

In response, Dow sent a facsimile copy of Plaintiff's job description. AR 129-32. The cover letter stated that "[a]ccording to information in [Plaintiff's] LTD file, he was originally injured on June 22, 1992. His last date at work was June 17, 2002 . . . We don't know the exact date of [Plaintiff's] accident. He would have to provide that documentation as it is not in his LTD file." AR at 129. According to payroll records e-mailed from Dow to the Claims Examiner, Plaintiff became exempt from sick leave reporting requirements sometime after February 4, 2001, and the regular hours of Plaintiff's employment after that point are absent. AR at 133.

On November 2, 2004, counsel provided the Claims Examiner with a supplemental letter addressing Plaintiff's claim. AR at 136-38. The letter addressed whether Plaintiff's claim met the Plan's requirements that his disability occur within 365 days of the accident. AR at 136-37. It stated that "[Plaintiff's] attorney, in worker's compensation proceedings, took the position that the correct date of last work was June 18, 2002." AR at 136.

On November 16, 2004, the Claims Examiner denied Plaintiff's claim after review of the record. AR at 139-43. The Claims Examiner concluded that Plaintiff had not suffered an "injury" within 365 days of an "accident" that had left him permanently and totally disabled. AR at 142. According to the Claims Examiner, the record "indicates that you injured your back as a result of a lift injury at work on June 22, 1992. Additionally, the Claims Examiner concluded that Plaintiff had not established that his "injury" was as a result of an "accident," as defined under the Plan. *Id.*

On January 10, 2005, Plaintiff appealed the denial of his request for benefits. AR at 145. In that letter, Plaintiff contended that he was totally and permanently disabled and reported that he received long term disability benefits from METLIFE and disability benefits from the Social Security Administration. *Id.* With regard to his final day of employment, Plaintiff stated that "[f]or administrative reasons only, the date of June 18, 2002 was used as my last day of work. I did not report to work at the site after December 2001. Therefore my last day worked was indeed within the 365 days required under the policy." *Id.*

In response, the Claims Examiner contacted Dow to verify whether Plaintiff was a part-time employee and the date Plaintiff "actually performed work for Dow, either at home or at the site, whichever last occurred." AR at 152. Dow responded as follows:

> Mr. Nelson was not classified as a part-time. Mr. Nelson did leave the site in January 2002 and was provided the opportunity to work from home with a laptop computer (performing temporary duties during a transition of other personnel at the facility). In this timeframe (sic) he was on the Payroll as an active employee. In June 2002, his chronic pain and medications prevented him from performing this job, and he then went on medical leave.

*Id.* Additionally, the Claims Examiner contacted Plaintiff's supervisor at Dow. AR at 161. He stated that his "best estimate" was that Plaintiff's final day of work at a Dow facility was December

14, 2001 and that Dow "organized a plan that allowed [Plaintiff] to contribute while working at home." *Id*. He further recalled that Plaintiff went on medical leave in early June 2002. *Id.*

Ultimately, an appeals committee denied Plaintiff's appeal on the same grounds as the denial of his claim. AR at 179-80. After the committee reviewed the entire record, it "concluded that the original alleged 1992 accident happened more than 365 days prior to June 18, 2002. Similarly, the 2001 alleged accident, which happened in May or earlier of 2001, happened more than 365 days prior to June 18, 2002. Therefore, [Plaintiff is] not entitled to permanent total disability benefits as you fail to meet the 365 day requirement under the policy." AR at 180.

Although the cross motions were scheduled for hearing before this Court on November 27, 2007, the Court has reviewed the parties' submissions and finds that the relevant law and facts have been set forth in the motion papers. The Court concludes that oral argument will not aid in the disposition of the motion. Accordingly, it is **ORDERED** that the motion be decided on the papers submitted. *Compare* E.D. Mich. LR 7.1(e)(2).

II.

Section 502(a)(1)(B) of ERISA authorizes an individual to bring an action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). The parties agree that this Court should review Defendant's denial of benefits under the arbitrary and capricious standard. See May 17, 2007 Court Scheduling Order at ¶ B. This highly deferential review is appropriate when the ERISA-regulated plan at issue clearly grants discretion to the plan administrator. *Sanford v. Harvard Indus., Inc.*, 262 F.3d 590, 595, 597 (6th Cir. 2001).

The Sixth Circuit has described the arbitrary and capricious standard of review as "the least demanding form of judicial review of administrative action. When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Shields v. Reader's Digest Ass'n, Inc.*, 331 F.3d 536, 541 (6th Cir. 2003) (internal quotations and citation omitted). When applying this standard, the Court must determine whether the administrator's decision was reasonable in light of the available record evidence. Although the evidence may be sufficient to support a finding of disability, if there is a reasonable explanation for the administrator's decision denying benefits in light of the plan's provisions, then the decision was neither arbitrary nor capricious. *Williams v. Int'l Paper Co.*, 227 F.3d 706, 712 (6th Cir. 2000). Yet the deferential standard of review does not equate with using a rubber stamp – a court must review the quantity and quality of the medical evidence on each side. *Evans v. Unumprovident Corp.*, 434 F.3d 866, 876 (6th Cir. 2006).

A decision reviewed according to the arbitrary and capricious standard must be upheld if it is supported by "substantial evidence." *Baker v. United Mine Workers of America Health & Retirement Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991). Substantial evidence supports an administrator's decision if the evidence is "rational in light of the plan's provisions." *See Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir. 1997). A court generally considers only that evidence presented to the plan administrator at the time he or she determined the employee's eligibility in accordance with the plan's terms. *Id*. The court's review thus is limited to the administrative record. *See Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 618 (6th Cir. 1998).

Additionally, courts have seen fit to note other administrative decisions: "[a social security] determination, though certainly not binding, is far from meaningless." *Calvert*, 409 F.3d at 294.

In *Glenn*, 461 F.3d at 668-669, the Sixth Circuit treated a plan administrator's failure to consider a social security decision of disability and its grant of benefits as a significant factor when reviewing the plan administrator's decision. Although the standards applicable to ERISA cases do not equate with the standards applicable to social security cases, a finding of disability within a social security context indicates that at least one entity concluded that medical evidence did support a finding of disability. Thus, courts consider a variety of factors in reviewing whether a plan administrator's determination was arbitrary and capricious.

III.

Upon review of the administrative record, the Court finds that the denial of benefits is reasonable under the Plan. The key provision in the Plan provides "within 365 days of . . . the accident an Insured Person is totally and permanently disabled and prevented from engaging in each and every occupation or employment for compensation or profit for which he is reasonably qualified by reason of his education, training or experience. . ." Assuming that Plaintiff sustained an injury, under the terms of the Plan, sometime in May of 2001, Defendants' decision relies on the fact that Plaintiff's final day of work occurred on June 18, 2002.

In his motion, Plaintiff concedes that "according to the policy, Plaintiff needs to be totally and permanently disabled by May of 2002" in order to recover under the Plan's terms. *Dkt # 10* at 5. Plaintiff further asserted that "as a favor for Plaintiff, Dow allowed Plaintiff to stay on the payroll until he turned 50. Plaintiff was not able to work his normal job at Dow however. Plaintiff only helped out Dow on his personal computer for 5-10 hours per week." *Id.* at 6. Even assuming these assertions as true, though Plaintiff did not cite to portions of the record for support, Defendants' decision was still reasonable in light of the available record.

The record supports both parties' contention that as of December of 2001, Plaintiff was still working, as defined by the Plan, for Dow. Further, both parties agree that Plaintiff stopped working at the Dow facility and began to "help out" Dow at his home through the use of a Dow laptop computer. The Claims examiner as well as the appeals committee determined that the activities performed at home were, in fact, work. The record supports that such a finding is reasonable.

Plaintiff's position is that June 18, 2002 was his final day of work "for administrative reasons only," and his last day of work is really in December 2001. This position, at a minimum is contradicted by Plaintiff's and Dow employee's statements. First, Plaintiff wrote on his claim form that June 18, 2002 was date that he last worked. Next, the record indicates that Plaintiff was placed on official medical leave on or about June 18, 2002. When Plaintiff's claim was denied, he wrote in his May 18, 2004 letter to the Claims Examiner that he "had last actively worked on June 18, 2002."

The Claims Examiner further investigated the ambiguity surrounding Plaintiff's final date of work. In response to her first inquiry, Dow stated that Plaintiff's "last date at work was June 17, 2002." The Claims Examiner then contacted Plaintiff's supervisor to determine his final date of employment and his supervisor's estimated that Plaintiff stopped working at a Dow facility in December 2001 and Dow "organized a plan that allowed [Plaintiff] to contribute while working at home." His supervisor believed that Plaintiff went on medical leave in June of 2002. Finally, according to a report prepared by outside counsel, Plaintiff's counsel "took the position that the correct date of last work was June 18, 2002" at a worker's compensation proceeding.

These statements taken in together, indicate that there is a reasonable basis to find that Plaintiff was working until June 18, 2002. This finding reasonably leads to the conclusion that he

was working for the 365 day period following the "accident" and is thus precluded by the terms of the Plan.

Moreover, Plaintiff took the position that his work from home from January 2002 until June 18, 2002 was not really work, as he was not "engaging in each and every occupation or employment for compensation or profit for which he is reasonably qualified by reason of his education, training or experience." Essentially, Plaintiff asserts that the computer work that he did at home was not work, as opposed to what would be his normal duties of employment. The record indicates, however, that there is ample evidence supporting the conclusion that his normal duties included working on a computer.

After Plaintiff's injury to his shoulder in January of 2001, a medical report indicates that Plaintiff was unable to work because "his work requires lots of computer work." In March of 2001, a medical report indicates that as a "Supervisor/Coach/Activity Coordinator," Plaintiff spends "much of his time" working on a computer. In fact, Dow installed an alternate keyboard and mouse in order to accommodate his shoulder injury so that he could continue working. A July 2004 medical report indicates that Plaintiff had been working from home on his computer and was now taking medical leave with Dow's support.

Additionally, Plaintiff's supervisor indicated that Dow developed a plan to allow Plaintiff to "contribute while working from home." Moreover, Plaintiff acknowledged in the record that he remained on Dow's payroll during this period of working from home. Applying these facts to the Plan's provision that requires Plaintiff to demonstrate that he was unable to perform "each and every occupation or employment," Defendants had a reasonable basis to conclude that Defendant worked until June 18, 2002. Thus, the record contains ample evidence to support a reasonable conclusion

that Plaintiff was not injured within 365 days from the date of the accident, as defined under the plan.

Additionally, the Court will not address Defendants' second basis for denying benefits, as their conclusion that Plaintiff was not injured under the terms of the Plan was not arbitrary or capricious . Thus, their alternative argument is moot.

IV.

The Courts finds that a reasonable explanation for Defendant's denial of Plaintiff's benefits exists in light of the plan's provisions and in light of the evidence contained in the administrative record.

Accordingly, it is **ORDERED** that Defendants' motion to affirm administrative decision denying Plaintiff's total disability benefits [dkt #8] is **GRANTED**.

It is **ORDERED** that Plaintiff's motion in response to Defendant's motion to affirm [dkt #8] is **DENIED**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: November 28, 2007

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on November 28, 2007.

s/Tracy A. Jacobs
TRACY A. JACOBS